UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MUTHU NARAYANAN,

                      Plaintiff,      15-CV-6165 T

     v.                           **DECISION AND ORDER**

SUTHERLAND GLOBAL HOLDINGS, INC.,

                      Defendant.
_____

## **INTRODUCTION**

Plaintiff Muthu Narayanan ("Plaintiff") commenced the instant action on March 25, 2015, alleging claims for breach of contract and unjust enrichment against defendant Sutherland Global Holdings, Inc. ("Defendant"), a corporation of which Plaintiff is a former director. Docket No. 1. On June 15, 2015, Defendant filed an answer to Plaintiff's complaint in which it asserted a counterclaim for breach of fiduciary duty against Plaintiff. Docket No. 12.

Following discovery, Defendant filed a motion for partial summary judgment (Docket No. 67) and Plaintiff filed a motion for summary judgment (Docket No. 73). On May 16, 2018, the Court entered a Decision and Order (the "May 16th Decision") (Docket No. 116) granting in part and denying in part each of these motions. In particular, the Court granted summary judgment to Plaintiff with respect to Defendant's counterclaim for breach of fiduciary duty and with respect to his claims for breach of the Redemption Agreement[1] and the 30% Net Exercise Agreement, and

---

[1] Capitalized terms and names used herein and not otherwise defined shall have the same meanings as in the May 16th Decision, familiarity with which is assumed for purposes of this Decision and Order.

granted summary judgment to Defendant with respect to Plaintiff's claim for unjust enrichment and breach of the 100% Net Exercise Amendment. *Id*. at 52.

Plaintiff has now filed a motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e), asking the Court to revisit its grant of summary judgment to Defendant on Plaintiff's claim for breach of the 100% Net-Exercise Agreement. For the reasons set forth below, Plaintiff's motion for reconsideration (Docket No. 120) is denied.

### DISCUSSION

**I.  Legal Standard**

"There are four basic grounds upon which a Rule 59(e) motion may be granted. First, the movant may demonstrate that the motion is necessary to correct manifest errors of law or fact upon which the judgment is based.... Second, the motion may be granted so that the moving party may present newly discovered or previously unavailable evidence. Third, the motion will be granted if necessary to prevent manifest injustice.... Fourth, a Rule 59(e) motion may be justified by an intervening change in controlling law." 11 Fed. Prac. & Proc. Civ., *Grounds for Amendment or Alteration of Judgment*, § 2810.1 (3d ed.) (footnotes omitted). "The standard for granting ... a motion [for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be

expected to alter the conclusion reached by the court." *Shrader v. CSX Transp.*, 70 F.3d 255, 256 (2d Cir. 1995).

## II. <u>The Court Did Not Make a Manifest Error of Law or Fact</u>

In this case, Plaintiff contends that relief under Rule 59(e) is warranted because the Court "misinterpreted a few key documents" and relied on a "mistaken premise" in granting Defendant summary judgment with respect to Plaintiff's claim for breach of the 100% Net Exercise Amendment. Docket No. 120-1 at 4. In particular, Plaintiff argues that the Court misinterpreted the Plan and erroneously concluded that the Board had the sole discretion to authorize the repurchase of Plaintiff's shares. Plaintiff further argues that, because of this purported error, the Court failed to appropriately consider whether Russo had the authority, as Defendant's Chief Financial Officer, to bind Defendant to the 100% Net Exercise Amendment. The Court finds these arguments without merit.

The Court thoroughly considered and analyzed the terms of the Plan, the Stock Option Agreement, the 30% Net Exercise Agreement, and the 100% Net Exercise Amendment in issuing the May 16th Decision. As the Court explained therein, the Plan provides that it shall be administered by the Board, and further provides that the Administrator (*i.e.* Board) may "in its sole discretion . . . provide that the Company may repurchase Shares acquired upon exercise of an Option." *See* Docket 116 at 45 (quoting Docket No. 70-2 at 10)). The Court further explained that the Stock Option Agreement, the 30% Net Exercise Agreement, and the 100% Net

Exercise Amendment were subject to the Plan, and that accordingly, "[t]he plain language of the parties' agreements . . . compels the conclusion that any repurchase of Plaintiff's shares was in the sole discretion of the Board and required its authorization." *Id*. at 45-46.

Plaintiff argues that the Court misinterpreted the language of the parties' agreements and that the Plan did not govern the sale of Plaintiff's shares to Defendant. Specifically, Plaintiff contends that, under the Plan, "the sole authority of the Board to approve a repurchase of Shares obtained upon the exercise of a participant's Option is expressly limited to scenarios that indisputably are not present here." Docket No. 120-1 at 10-11. Plaintiff argues that the Board's authority is limited to situations in which repurchase occurs "upon the occurrence of certain specified events, including, without limitation, a Holder's termination as a service provider, divorce, bankruptcy, or insolvency" and where the "repurchase right . . . [is] set forth in the applicable Option Agreement or Restricted Stock purchase agreement or in another agreement referred to in such agreement." *Id*. at 12-13 (internal quotation omitted). Plaintiff further contends that these conditions were not met in this case and that, accordingly, the Court erred in finding that the Board had the sole authority to authorize the repurchase of Plaintiff's shares.

Plaintiff has failed to demonstrate a manifest error of law or fact by the Court. First, Plaintiff's argument ignores the many other provisions of the Plan that confirm that the Board had the

sole authority to enter into the 100% Net Exercise Amendment. For example, the Plan provides that the Board has the sole discretion to permit an option holder to satisfy its tax obligations by allowing Defendant to withhold shares. *See* Docket 70-2 at 2 (only the Administrator may "allow Holders to satisfy tax and other obligations by electing to have the Company withhold from the Shares to be issued upon exercise of an Option or Stock Purchase right that number of Shares having a Fair Market Value equal to the minimum amount required to be withheld or paid"). In this case, the 100% Net Exercise Amendment indisputably permitted Plaintiff to satisfy his tax withholding obligation by having Defendant "withhold from the issuance [thereunder] that number of Shares having a Fair Market Value equal to the sum of the Total Exercise Price and the minimum statutory withholding obligations due. . . ." Docket No. 70-27 at 35.

The Plan also provides that the Administrator has the authority to determine "[t]he consideration to be paid for the Shares to be issued upon exercise of an Option," and that such consideration may, "<u>with the consent of the Administrator</u>," consist of "surrendered shares then issuable upon exercise of the Option having a Fair Market Value on the date of the exercise equal to the aggregate exercise price of the Option or exercised portion thereof." Docket No. 70-2 at 3 (emphasis added). The 100% Net Exercise permitted Plaintiff to surrender a portion of his shares as consideration for the shares he obtained upon exercise of his option. The 100% Net Exercise Amendment therefore contained terms

that only the Board, in its role as Administrator, was authorized to agree to under the plain language of the Plan. Plaintiff's contention that the 100% Net Exercise Amendment did not require Board approval is inconsistent with these additional Plan provisions.

Moreover, with respect to the specific conditions identified by Plaintiff, the 100% Net Exercise Amendment (which contains the contested repurchase provision) satisfies them. The 100% Net Exercise Amendment provides it is "conditioned upon the consummation of the transactions contemplated by the Stock Purchase Agreement." Docket No. 70-27 at 34. As such, the repurchase provision at issue was conditioned on the occurrence of a specified event.

The repurchase provision at issue was also contained in an agreement referred to in the Stock Option Agreement. Specifically, the Stock Option Agreement provides that Plaintiff's option is exercisable only pursuant to the terms of the Notice attached thereto as Exhibit A. Docket No. 73-21 at 3. The Notice in turn provides that the parties shall "execute such further instruments . . . as may be reasonably necessary to carry out the purposes and intent of [the Stock Option Agreement]." *Id*. at 11. The 100% Net Exercise Amendment falls within this definition, and thus qualifies as an agreement referred to in the Stock Option Agreement.

Accordingly, and as the Court determined in its May 16th Decision, the plain language of the parties' various agreements required Board approval of the 100% Net Exercise Amendment, which

was never given.  This express requirement of Board approval moots Plaintiff's contention that Russo verbally bound Defendant to the 100% Net Exercise Amendment - again, as the Court determined in its May 16th Decision. The Court therefore finds no merit in Plaintiff's contentions that it misinterpreted the Plan or that it failed to consider Russo's position with Defendant or the extent of his authority.

The Court further notes that the Stock Option Agreement provides that Plaintiff agrees to "accept as binding, conclusive and final all decisions or interpretations of the Administrator upon any questions arising under the Plan or this Option." Docket No. 73-21 at 6.  Accordingly, Defendant's Board, as the Administrator, had the express authority under the plain language of the Stock Option Agreement to determine whether Russo could verbally agree to repurchase 100% of Plaintiff's shares. Plaintiff's argument fails to acknowledge or discuss this provision of the Stock Option Agreement, which again makes it clear that all ultimate decision-making related thereto lies within the Board's discretion.

For the reasons set forth above, the Court finds that it did not commit a manifest error of fact or law in the May 16th Decision, nor has Plaintiff demonstrated that reconsideration is warranted on any other ground. Plaintiff's disagreement with the Court's conclusions is not an appropriate basis for a reconsideration motion. *See Becnel v. Deutsche Bank AG*, 838 F. Supp. 2d 168, 171 n.16 (S.D.N.Y. 2011) ("Mere disagreement with [the Court's] opinion

. . . is not a basis for reconsideration."). Accordingly, the Court denies Plaintiff's motion for reconsideration.

**CONCLUSION**

For the reasons set forth above, Plaintiff's motion for reconsideration (Docket No. 120) is denied.

**ALL OF THE ABOVE IS SO ORDERED.**

                      **s/Michael A. Telesca**

                      MICHAEL A. TELESCA
                United States District Judge

DATED:    Rochester, New York
            August 8, 2018