UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MUTHU NARAYANAN,

              Plaintiff,

     v.

SUTHERLAND GLOBAL HOLDINGS INC.,

              Defendant.
_____

**DECISION AND ORDER**

6:15-CV-06165 EAW

## INTRODUCTION

There are two trial-ready claims pending in the instant diversity action: (1) a claim for breach of contract by plaintiff Muthu Narayanan ("Plaintiff"); and (2) a counterclaim for breach of fiduciary duty by defendant Sutherland Global Holdings Inc. ("Defendant"). The parties agree that Plaintiff has waived his right to a jury trial as to his breach of contract claim. However, there is a dispute as to whether Defendant is entitled to a jury trial on its breach of fiduciary duty counterclaim. For the reasons discussed below, the Court finds that Defendant has also waived its right to a jury trial and its demand for the same is accordingly stricken.

## BACKGROUND

This case has an extensive procedural history, familiarity with which is assumed for purposes of the instant Decision and Order. The Court summarizes the salient facts below.

Plaintiff commenced the instant action on March 25, 2015. (Dkt. 1). In his complaint, Plaintiff asserted two claims for breach of contract and two claims for unjust enrichment. (*Id*.). One breach of contract claim and one unjust enrichment claim sought just under $2 million in damages related to Defendant's alleged refusal to pay Plaintiff the proceeds for his sale of certain "Option Shares." (*Id*. at ¶¶ 39-48). The other breach of contract and unjust enrichment claims sought approximately $11,290.80 in damages related to Defendant's alleged refusal to pay Plaintiff the proceeds for his sale of 1,000 shares of stock under a "Redemption Agreement." (*Id*. at ¶¶ 49-56). Plaintiff's complaint did not contain a jury demand.

On June 15, 2015, Defendant filed an answer to the complaint. (Dkt. 12). In its answer, Defendant asserted as an affirmative defense that Plaintiff "owes Sutherland an amount of money that far exceeds, and will be a complete set-off to, the amount of money claimed by Plaintiff in this action." (*Id*. at ¶ 59). Specifically, Defendant asserted that Plaintiff had breached his fiduciary duty to Defendant in connection with a land acquisition project in India while serving as a corporate director. (*Id*. at ¶¶ 60-86). Relying on the same facts set forth in its affirmative defense, Defendant also asserted a counterclaim for breach of fiduciary duty against Plaintiff. (*Id*. at ¶¶ 97-104). Defendant's answer contained a jury demand for "all issues eligible." (*Id*. at 15).

Plaintiff moved to dismiss Defendant's counterclaim and to strike the related affirmative defense, arguing principally that the counterclaim should be dismissed as derivative, because the funds he was alleged to have misappropriated belonged to

Defendant's Indian subsidiary. (Dkt. 20; Dkt. 21). In opposition, Defendant argued, among other things, that Plaintiff's alleged breach of fiduciary duty had "enable[ed] him . . . to remain on [Defendant's] Board and in a position to make the present $2 million claim[.]" (Dkt. 30 at 7). Defendant further argued that its set-off defense "must be heard in conjunction with this action." (*Id*. at 8). On November 23, 2015, United States District Judge Michael A. Telesca, to whom the matter was then assigned, issued a Decision and Order denying Plaintiff's motion. (Dkt. 37). Plaintiff thereafter filed an answer to Defendant's counterclaim. (Dkt. 38).

In 2017, after the close of discovery, the parties filed cross-motions for summary judgment. (Dkt. 67; Dkt. 73). On May 16, 2018, Judge Telesca entered a Decision and Order in which he: (1) granted Plaintiff summary judgment on his claim for breach of the Redemption Agreement; (2) granted Plaintiff summary judgment on his breach of contract claim related to the Option Shares to the extent he claimed breach of a 30% Net Exercise Agreement; (3) granted Plaintiff summary judgment on Defendant's breach of fiduciary duty counterclaim; (4) granted Defendant summary judgment on Plaintiff's breach of contract claim related to the Option Shares to the extent he claimed breach of a 100% Net Exercise Agreement; and (5) granted Defendant summary judgment on Plaintiff's unjust enrichment claims. (Dkt. 116).

The parties appealed Judge Telesca's Decision and Order to the Court of Appeals for the Second Circuit. (Dkt. 127; Dkt. 130). The Second Circuit subsequently issued a summary order vacating the judgment and remanding the matter for further proceedings.

(Dkt. 153). The Second Circuit noted that Plaintiff had appealed "the dismissal of his breach of contract claim related to one of the stock buyback agreements" and that Defendant had appealed "the dismissal of its breach of fiduciary duty counterclaim." (*Id*. at 3). Plaintiff did not pursue an appeal of the dismissal of his unjust enrichment claims, and Defendant did "not contest the district court's conclusion that it agreed to the 30% Buyback Agreement and that this agreement is valid and enforceable" (*id*.), nor did it appeal Judge Telesca's grant of summary judgment on the breach of contract claim related to the Redemption Agreement.

The case was reassigned to the undersigned on September 18, 2019. (Dkt. 152). The Court held a trial date status conference on November 11, 2019, and scheduled a jury trial for June 15, 2020. (Dkt. 157). At the status conference, there was a brief discussion as to whether there was a right to a jury trial as to some claims, and the Court advised the parties to submit as part of their pretrial filings their respective positions on "exactly what claims are going to be tried by the jury, and what, if any, would not be tried by the jury." (Dkt. 166 at 11). The trial scheduled for June 15, 2020, was subsequently adjourned due to the global COVID-19 pandemic, and no pre-trial submissions were filed. (Dkt. 162).

In April of 2021, as part of its effort to resume civil trials notwithstanding the ongoing challenges presented by the COVID-19 pandemic, the Court issued a Text Order requiring the parties to submit a joint status report indicating, among other things, whether the case would be tried by a jury. (Dkt. 163). The parties' joint status report indicated that they had a dispute regarding Defendant's right to a jury trial on its breach of fiduciary duty

counterclaim. (Dkt. 164). Upon order of the Court (Dkt. 165), the parties subsequently filed briefing setting forth the basis of their dispute (Dkt. 167; Dkt. 168). In his briefing, Plaintiff requested that the Court strike Defendant's jury demand and conduct a bench trial on all remaining claims. (Dkt. 168 at 5).

## DISCUSSION

In a federal civil case, "[t]he right of trial by jury as declared by the Seventh Amendment to the Constitution—or as provided by a federal statute—is preserved to the parties inviolate." Fed. R. Civ. P. 38(a). A party may waive its Seventh Amendment right to a jury trial, provided that it does so "knowingly and intentionally." *Ruane v. Bank of Am., N.A.*, 308 F. Supp. 3d 718, 721 (E.D.N.Y. 2018) (citation omitted). Because the right to a jury trial is "fundamental," the "party seeking to strike a jury demand bears the burden of proof to overcome [a] presumption against . . . waiver[.]" *Id.* (citation omitted).

"Although the right [to a jury trial] is fundamental and a presumption exists against its waiver, a contractual waiver is enforceable if it is made knowingly, intentionally, and voluntarily." *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 188 (2d Cir. 2007). As another court in this Circuit has explained:

> The factors a court must consider in determining whether a contractual waiver of a right to a jury trial was entered into knowingly and voluntarily include: 1) the negotiability of contract terms and negotiations between the parties concerning the waiver provision; 2) the conspicuousness of the waiver provision in the contract; 3) the relative bargaining power of the parties; and 4) the business acumen of the party opposing the waiver. When the criteria outlined above have been met, the waiver has been deemed enforceable.

*Morgan Guar. Tr. Co. of New York v. Crane*, 36 F. Supp. 2d 602, 603-04 (S.D.N.Y. 1999) (citation omitted).

"If a contractual jury waiver is enforceable, a court must then analyze whether the claims in the action fall within the scope of the jury waiver clause." *Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd.*, 327 F. Supp. 3d 673, 686 (S.D.N.Y. 2018). Jury waiver provisions must not be construed in an overly broad fashion, but must also be interpreted consistently with their plain language. *Id*. at 686-87; *see also Allied Irish Banks, p.l.c. v. Bank of Am., N.A.*, 875 F. Supp. 2d 352, 356 (S.D.N.Y. 2012) ("Although some courts state that jury waivers are construed narrowly, courts have not hesitated to enforce jury waivers as written.").

Here, Plaintiff and Defendant are parties to a "Management Stockholders Agreement" (the "MSA") dated October 8, 2014, which contains the following jury waiver provision:

> TO THE EXTENT NOT PROHIBITED BY APPLICABLE LAW THAT CANNOT BE WAIVED, EACH OF THE COMPANY AND THE MANAGEMENT STOCKHOLDER HEREBY WAIVES AND COVENANTS THAT IT WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT, OR OTHERWISE) ANY RIGHT TO TRIAL BY JURY IN ANY FORUM IN RESPECT OF ANY ISSUE OR ACTION, CLAIM, CAUSE OF ACTION, OR SUIT (WHETHER IN CONTRACT, TORT, OR OTHERWISE), INQUIRY, PROCEEDING, OR INVESTIGATION ARISING OUT OF, OR BASED UPON, THIS AGREEMENT OR THE SUBJECT MATTER HEREOF, OR IN ANY WAY CONNECTED WITH OR RELATED TO OR INCIDENTAL TO THE TRANSACATIONS CONTEMPLATED HEREBY, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING.

(Dkt. 168-2 at 37-38). Plaintiff was required to enter into the MSA in order to exercise the stock options underlying his breach of contract claim and its terms were incorporated by reference into the Net Exercise and Share Sale Election contract that Defendant allegedly breached. (*Id*. at 3-4; *see also* Dkt. 167 at 21 (Defendant acknowledging that "the Net Exercise and Share Sale Election contract incorporated by reference (and attached as an exhibit) the Management Stockholders Agreement")). The MSA expressly states that it is being entered into "in connection with the exercise of the Options[.]" (Dkt. 168-2 at 30).

Defendant does not dispute that it entered into the MSA and its included jury waiver provision knowingly, intentionally, and voluntarily. Nor could it reasonably do so, given that it is a sophisticated corporate entity, that it drafted the MSA, and that the jury waiver is conspicuously included therein. Instead, Defendant argues that: (1) Plaintiff's assertion of the jury waiver provision is untimely; and (2) its breach of fiduciary duty counterclaim is not within the scope of the jury waiver. (Dkt. 167). The Court does not find these arguments persuasive.

As to the timeliness argument, "[p]arties have a great deal of latitude on the timing of motions to strike a jury demand. Because a court has the power to act *sua sponte* to strike a jury demand at any time, it follows that a court has the discretion to permit a motion to strike a jury demand at any time, even on the eve of trial." *Bear, Stearns Funding, Inc. v. Interface Grp.-Nevada, Inc.*, No. 03 CIV. 8259 (CSH), 2007 WL 3286645, at *3 (S.D.N.Y. Nov. 7, 2007) (citation and alteration omitted); *see also Chen v. Hunan Manor Enter., Inc.*, 340 F.R.D. 85, 89 (S.D.N.Y. 2022) ("[A] court has the discretion to permit a

motion to strike a jury demand at any time, even on the eve of trial."). Indeed, the issue of whether particular claims are within the scope of a jury waiver is often "better resolved following discovery and resolution of any motions for summary judgment, at which point it [is] more clear which, if any, parties and claims are headed for trial." *Taupita Inv., Ltd. v. Benny Ping Wing Leung*, No. 14 CIV. 9739 (PAE), 2017 WL 3600422, at *13 (S.D.N.Y. Aug. 17, 2017).

In this case, it only became clear which claims were headed for trial when the Second Circuit entered its summary order remanding the matter for further proceedings. At the first appearance held after entry of that summary order, the parties and the Court expressly left the issue of a jury trial versus a bench trial open, with the Court instructing the parties to brief the matter as part of their pre-trial submissions. However, those pre-trial submissions were ultimately not filed, because the trial was adjourned without date due to the COVID-19 pandemic. Then, in response to the Court's April 2021 Text Order, Plaintiff promptly alerted both Defendant and the Court that its position was that Defendant was not entitled to a jury trial on its breach of fiduciary duty counterclaim. Further, the trial of this case has not been rescheduled at this time. Under these circumstances, there has been no prejudice to Defendant based on the timing of Plaintiff's assertion of the jury waiver provision, and the Court does not find Plaintiff's request to strike untimely. *See Chen*, 340 F.R.D. at 89 (a court should decline to entertain a request to strike a jury demand based on timing only if "the party opposing the motion shows (1) an inexcusable delay by the movant and (2) prejudice as a result of the delay" (citation omitted)).

As to the scope of the jury waiver provision, the language used in the MSA is exceptionally broad. The plain language of the jury waiver provision is not limited to individual claims, but encompasses any "action" or "suit" or "proceeding" that is "in any way connected with or related to or incidental to" the transactions contemplated by the MSA. This action, including Defendant's affirmative defense and corresponding counterclaim based on the same underlying facts, undisputedly is connected with the option exercise underlying Plaintiff's breach of contract claim, which is a transaction contemplated by the MSA. In other words, Plaintiff's breach of contract claim has brought the entirety of this action—including Defendant's affirmative defense and corresponding counterclaim—within the broadly defined scope of the jury waiver provision.

Accordingly, under the plain language of the jury waiver provision, Defendant has waived any right to assert a right to trial by jury herein. *See Nat'l Westminster Bank, U.S.A. v. Ross*, 130 B.R. 656, 667-68 (S.D.N.Y. 1991) ("The Court rejects Ross's contention that the waiver clause does not encompass Ross's counterclaims. The plain language of the clause establishes that Ross 'waives the right in any litigation with the Bank . . . to trial by jury.' The phrase 'any litigation' means precisely that, and the Court construes that language to apply to Ross's counterclaims whether or not arising from the Guaranty."), *aff'd sub nom. Yaeger v. Nat'l Westminster*, 962 F.2d 1 (2d Cir. 1992); *see also Am. Equities Grp., Inc. v. Ahava Dairy Prod. Corp.*, No. 01 CIV. 5207, 2007 WL 4563487, at *5 (S.D.N.Y. Dec. 18, 2007) ("jury trial waivers in a contract are to be construed . . . to encompass . . . counterclaims whether or not arising from the contract at issue" where the

waiver applies broadly to litigation between the parties); *Wechsler v. Hunt Health Sys., Ltd.*, No. 94 CIV. 8294 (PKL), 2003 WL 21878815, at *6 (S.D.N.Y. Aug. 8, 2003) ("In the present case, the jury waiver provision in the HCP states, 'You hereby waive any and all right to trial by jury *in any action or proceeding arising from any action* brought under this Agreement. . . .' The contract claims raised by the plaintiff and the counterclaim raised by defendants do indeed fall within the rubric of this broad language.").

Further, even considered individually, Defendant's counterclaim is related or incidental to Plaintiff's option exercise. These terms do not, as Defendant seems to suggest, require a causal connection. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) ("For purposes of the present case, the key phrase . . . is 'relating to.' The ordinary meaning of these words is a broad one[.]"); *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128 (2d Cir. 2001) ("The term 'related to' is typically defined more broadly [than the term 'arising out of'] and is not necessarily tied to the concept of a causal connection."). The plain language of the jury waiver provision encompasses all claims that have even a minor connection with Plaintiff's option exercise. *See Allied Irish Banks*, 875 F. Supp. 2d at 356-57.

Defendant's counterclaim falls squarely within this provision of the jury waiver provision. As noted above, Defendant also asserted the exact facts underlying its counterclaim as an affirmative defense to Plaintiff's claim for breach of contract related to his option exercise. By definition, an affirmative defense is "a defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's … claim[.]" *Saks v.*

*Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003) (citation and original alteration omitted and emphasis added). Defendant cannot claim on the one hand that its breach of fiduciary claim is sufficient to defeat, in whole or in part, Plaintiff's breach of contract claim, and then on the other hand claim that there is not even an incidental relationship between the two causes of action.

Consistent with this analysis, in its opposition to Plaintiff's motion to dismiss and to strike, Defendant made clear that there was a connection between Plaintiff's alleged breach of fiduciary duty and his subsequent option exercise, arguing that "[h]ad [Defendant's] Board been fully informed of Plaintiff's misconduct, at a minimum, [Plaintiff] would have been terminated much sooner for cause and this stock option claim would not have arisen." (Dkt. 30 at 10). Defendant has never repudiated or recanted that position, but has maintained throughout this action that it is entitled to set-off any amount it owes Plaintiff for his option exercise because of his alleged breach of fiduciary duty. Accordingly, while there may not be a direct or causal connection between the option exercise and Defendant's counterclaim, there indisputably is some connection.

The decision in *Kortright* is persuasive and helpful. There, the jury waiver provision encompassed any claim "relating in any way" to the termination agreement in which it was contained. 327 F. Supp. 3d at 686. The court agreed with the plaintiff that this "clear and unambiguous language," which it described as "sweeping in scope," was broad enough to encompass a claim for negligent misrepresentation based on a prospective transaction with a third party, because the plaintiff also claimed it would not have entered into the

termination agreement absent those same misrepresentations. *Id*. at 687. Similarly, in this case, Defendant has taken the position that it never would have allowed Plaintiff to exercise his options—and thus would not have entered into the MSA—had it been aware of Plaintiff's alleged breach of fiduciary duty. While this may not be the most robust of connections, it is sufficient to satisfy the broad language of the jury waiver provision that Defendant drafted and entered into knowingly and voluntarily.

Defendant's arguments to the contrary ignore the plain language of the jury waiver provision and accordingly are not persuasive. Defendant contends that "a finding of liability on [Defendant's] counterclaim can unequivocally be reached without regard to, and absent interpretation of, the Management Stockholders Agreement." (Dkt. 167 at 22). While this may be true, the jury waiver provision is not limited to actions or claims arising out of—and thus requiring interpretation of—the MSA, but extends much more broadly to actions or claims that are "in any way connected with or related to or incidental to" the transactions contemplated by the MSA. *See MAK Mktg., Inc. v. Kalapos*, 620 F. Supp. 2d 295, 305 (D. Conn. 2009) (explaining that "courts have noted that 'in connection with,' 'relating to,' and 'associated with' are all typically defined more broadly than 'arising out of,' and are not necessarily tied to the concept of a causal connection"). In other words, connection between liability on the two claims is not required.

A similar analysis applies to Defendant's argument that "the relationship between Narayanan and Sutherland Global does not emanate from the Management Stockholders Agreement[.]" (*Id.* at 23). Again, the jury waiver is not limited to claims that directly

implicate the MSA. The Court is bound to enforce the terms of the jury waiver provision as it is written. *See Allied Irish Banks*, 875 F. Supp. 2d at 356. And, as written, the jury waiver provision is drafted broadly enough to encompass a breach of fiduciary duty counterclaim that is premised on facts Defendant maintains form a defense to Plaintiff's breach of contract claim, particularly where Defendant has asserted the exact same facts as an affirmative defense in this action.

## CONCLUSION

The Court concludes, for the reasons previously set forth, that Defendant has waived its right to a jury trial on its breach of fiduciary duty counterclaim. Defendant's jury demand is stricken, and the Court will conduct a bench trial on all remaining claims in this action. The Court will schedule a trial date status conference in a subsequent order.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: January 26, 2023
       Rochester, New York